# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

　　　　　　　Plaintiff,

v.

James Earl Wilkinson,

　　　　　　　Defendants.

**ORDER ADOPTING REPORT AND
RECOMMENDATION**
Case No. 25-cr-00200 (MJD/LIB)

Robert D. Richman, Robert D. Richman LLC, Counsel for Defendant.

Mary Riverso, Assistant United States Attorney, Counsel for Respondents.

The above-entitled matter comes before the Court upon the Report and

Recommendation ("R&R") of United States Magistrate Judge Leo I. Brisbois filed

January 16, 2026. [Doc. 60.] Defendant James Earl Wilkinson (hereafter

"Defendant") has filed objections to the Report and Recommendation. [Doc. 61.]

The Plaintiff responded to the objections. [Doc. 62.]

Pursuant to statute, the Court has conducted a de novo review upon the

record. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). Based upon that review, the

Court adopts the Report and Recommendation of Magistrate Judge Brisbois.

1

## I.    Facts

The following facts are adopted from the R&R. [Doc. 60 at 2–8.] However, the Court includes additional facts which are not contrary to those already included in the R&R but are raised by Defendant and necessary to understand Defendant's objections. [See Doc. 61 at 3–5.] Further, the Court's description of the facts below highlight only those relevant for the Court to decide the matters at issue. For a full description of the facts, see the R&R. [Doc. 60 at 2–8.]

On October 16, 2022, around 5:30 a.m., a 911 call was transferred from the Pine County Sheriff's Department to the Duluth Police Department regarding a shooting in the downtown Duluth area. [Id. at 2 (citing Def. Ex. 10).] Scott Lindgren had placed the call, and he claimed that he had been in the alley behind Sammy's Pizza in downtown Duluth when Defendant attacked him, shot him in the elbow, and stole $1,500 from him. [Id. (citing Def. Ex. 10A at 1–5).] Lindgren communicated to police that Defendant had been driving either a white Chevy Malibu or a white Chevy Cruze with a bumper that did not match the rest of the car. [Id. (citing Def. Ex. 10A at 5).]

The Pine County Sheriff's Office went to speak to Lindgren soon after the initial 911 call. [Doc. 61 at 3 (citing Tr. at 67.)] Pine County police interviewed

Lindgren and found discrepancies in his account of what transpired. [Doc. 61 at 3.] Pine County sheriffs who responded found no evidence to corroborate that Lindgren had been shot. [Id. at 5 (citing Tr. 51).] Medics also confirmed that Lindgren had a minor scrape on his elbow, but it was not consistent with a gunshot wound. [Id. (citing Tr. 51).] Lindgren had also told the sheriffs that Defendant had shot and hit his side view mirror, but officers did not find damage to the car that was consistent with a gunshot. [Id. (citing Tr. 53).]

This information, including the discrepancies in Lindgren's account, was relayed to the Duluth Police Department, although the exact timeline remains somewhat elusive. [Id. (citing Tr. 51).] Pine County deputies reported to Duluth Police Officer Tomlin that Lindgren had a scrape on his elbow that was inconsistent with a gunshot wound. [Doc. 61 at 4 (citing Tr. 51).] Officer Tomlin called Lindgren that same morning around 8:08 a.m. [Doc. 61 at 4 (citing Def. Ex. 11).] During their phone call, Lindgren's account of what transpired continued to change. [Id.] The Duluth Police Department continued their investigation, and they did not find any evidence that there had been a shooting in the area behind Sammy's Pizza. [Doc. 60 at 5–6.]

However, earlier that morning around 6:00 a.m., Duluth Police Department Investigator Elijah Anderson had learned of the alleged shooting and robbery behind Sammy's. [Doc 60 at 3 (citing Tr. 18).] He was informed that Defendant had been implicated by name; that Defendant was allegedly in possession of and used a handgun; and that Defendant had been driving a white passenger car, possibly a Chevy Malibu or a Chevy Cruze. [Id. (citing Tr. at 18, 19).] As Investigator Anderson went to leave the police station to begin his patrol, an active 911 call came in from Maleecyia Hopson for a domestic incident. [Id. (citing Tr. 19, 20).]

At approximately 6:44 a.m., Hopson called 911 to report that the father of her son, Defendant, had assaulted her that morning at her apartment complex. [Id. (citing Gov't. Ex. 1 at 2).] Hopson mentioned that Defendant was in possession of a firearm and had also been known to carry a firearm in the past. [Id. (citing Gov't. Ex. 1 at 2, 3).] Hopson also told police that Defendant had arrived at the apartment complex in a silver Buick LaCrosse. [Id. (citing Gov't. Ex. 1 at 5).]

While she was on the 911 call, Defendant returned to Hopson's apartment and pounded on the door asking for his car keys. [Id. (citing Def. Ex. 12 at 03:15–

4

03:21).] Hopson reported that Defendant told her he was going to "stash the gun he has." [Doc. 61 at 4 (Def. Ex 12A at 6; Tr. 45).] Defendant eventually left after Hopson did not let him in, and she observed him fleeing into a wooded area behind the apartment complex on foot. [Doc. 60 at 3 (citing Gov't. Ex. 1 at 2).] Security camera footage confirms that Defendant did not return to his vehicle. [Doc. 61 at 4 (citing Def. Ex. 13-18.)]

Investigator Anderson, and Duluth police Officers Letica and Dardis, arrived at the apartment building in response to the 911 call. [Doc. 60 (citing Tr. 24).] Officer Dardis located Defendant's vehicle in the parking lot. [Id. (citing Tr. 25).] The vehicle matched the make, model, color, and license plate number that Hopson had described in her 911 call. [Id. (citing Tr. 25, 26).] Investigator Anderson and Officer Letica briefly searched the park area behind the apartment complex, but did not locate Defendant. [Id. (citing Tr. 42, 43).]

Investigator Anderson, Officer Letica, and Officer Dardis spoke to Hopson at her apartment, where they noted she appeared to have been crying and seemed to have some bruising and puffiness around her eyes. [Id. at 4 (citing Tr. 26).] Hopson never indicated that she had the keys to the Buick LaCrosse, and officers were otherwise unable to locate them. [Id. (citing Tr. 62).] Officers

received Defendant's phone number from Hopson, and Investigator Anderson spoke to Defendant briefly on the phone. [Id. (citing Tr. 26–27).] Defendant did not come out of the woods, even after Investigator Anderson informed him that his vehicle would be towed. [Id. (citing Tr. 27).] Officers then had the Buick LaCrosse towed. [Id.]

The vehicle was towed by Gus Gaskill to his personal tow yard, an indoor secure storage facility, pending issuance of a search warrant. [Id. (citing Tr. 29).] Defendant's mother, Melody Gonsalez, reportedly called to inquire about obtaining her vehicle two weeks after it was towed, but at that time, the officers informed her that Defendant was still under investigation and therefore, the car would not be released. [Id. (citing 72).] There is no documentation regarding whether or not Mr. Gaskill received any notification indicating that the Buick LaCrosse was free to be released from his tow yard. [Id. at 6 (citing Tr. 60).] Ms. Gonzales also apparently did not make any further attempts to retrieve her vehicle. [Id. (citing 72, 74).]

In the meantime, the investigation into Lindgren's account of a shooting and robbery behind Sammy's Pizza was closed in January 2023 for lack of corroborating evidence. [Id. at 6 (citing Tr. 30).]

On December 8, 2022, Duluth Police Officer Nitz submitted an application to the Minnesota State Court requesting a search warrant for Defendant, Hopson's apartment, and Hopson's Chevy Equinox for firearms, firearm ammunition, and firearm indicia and accessories. [Id. (citing Gov't. Ex. 1).] In his affidavit submitted in support of the December 8, 2022, Search Warrant, Officer Nitz provided information regarding Hopson's 911 call; Defendant's alleged possession of a firearm on October 16, 2022; surveillance footage of Defendant with an object believed to be a gun in his possession on October 16, 2022; Defendant's arrest warrant for the October 16, 2022, domestic incident; a Minnesota Department of Corrections Felony Warrant issued on October 16, 2022; and a brief description of the phone calls between Investigator Anderson and Defendant at the scene of the alleged domestic incident. [Id.]

The Honorable Mark M. Starr determined that probable cause existed to support the issuance of the Warrant. [Id. at 7] Thereafter, law enforcement officers executed the December 8, 2022, Search Warrant.

Meanwhile, Mr. Gaskill continued storing the Buick LaCrosse in his locked storage area on Grand Avenue in Duluth. [Id. (citing Tr. 33).] Law enforcement never obtained a search warrant or went to see the vehicle. [Id. (citing Tr. 59).]

Mr. Gaskill, after the necessary time had passed, took legal possession of the Buick LaCrosse. [Id. (citing Tr. 32;  Def. Ex. 6).] Upon taking legal possession, Mr. Gaskill looked inside the vehicle and found a pistol, drugs, a magazine for a firearm, and an expended nine-millimeter cartridge casing. [Id. (citing Tr. 33).] Mr. Gaskill turned over these items to the Duluth police. [Id. at 7–8.]

## II.     Report and Recommendation Determinations & Accompanying Objections

As part of his R&R, Magistrate Judge Brisbois analyzed 1) Defendant's motion to dismiss count 2 of his indictment (the "felon in possession") based on a violation of the Second Amendment of the United States Constitution; and 2) Defendant's motions to suppress evidence, based on violations of the Fourth Amendment of the United States Constitution.

The Court evaluates Magistrate Judge Brisbois's determinations and holds that 1) Defendant's indictment for felon in possession does not violate his Second Amendment rights, and 2) the police's seizure of Defendant's vehicle as well as subsequent search of Hopson's home pursuant to a search warrant does not violate Defendant's Fourth Amendment rights.

**A. Motion to Dismiss Count Two [Doc. 37]**

Defendant moved the Court to dismiss count 2 of his indictment (the felon in possession charge pursuant to 18 U.S.C. § 922(g)(1)) because the charge violates the Second Amendment of the U.S. Constitution in light of the Supreme Court's decision in New York State. Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). [Doc. 37.] Magistrate Judge Brisbois correctly dismissed this argument, pointing to the Eighth Circuit in United States v. Jackson, 110 F.4th 1120 (8th Cir. 2024). Therefore, because this Court is bound by Eighth Circuit precedent, Magistrate Judge Brisbois viewed this matter as effectively settled. [See id.]

Defendant acknowledges that his objection to Magistrate Judge Brisbois's conclusion on the Second Amendment issue is based on the "current uncertainty in Second Amendment jurisprudence" and was made solely to preserve the argument on appeal. [See Doc. 61 at 1, n. 1.] However, the question surrounding the constitutionality of § 922(g)(1) is not uncertain in this Circuit. Therefore, this objection is overruled.

**B. Motions to Suppress Evidence Obtained as a Result of Search and Seizure [Docs. 38, 41.]**

Defendant made two separate motions to suppress evidence obtained as a result of a search and seizure. The first motion focuses on the seizure and subsequent search of the Buick LaCross. [See Doc. 38.] The second motion focuses on evidence seized during the search of Hopson's apartment. [See Doc. 41.] Magistrate Judge Brisbois recommended denying both motions. [See Doc. 60 at 15–27.]

**1. Motion to Suppress the Seizure and Subsequent Search of the Buick LaCross [Doc. 38.]**

In his motion, Defendant argues that the Duluth Police Department lacked probable cause to support the seizure of the Buick LaCrosse. [Doc. 38; Doc. 52.] As noted by Magistrate Judge Brisbois, the automobile exception to the Fourth Amendment's warrant requirement permits warrantless searches/seizures that are supported by probable cause. See United States v. Soderman, 983 F.3d 369, 375 (8th Cir. 2020) (citing Chambers v. Maroney, 399 U.S. 42, 51–52 (1970)). Probable cause exists when, "given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Murillo-Salgado,

854 F.3d 407, 418 (8th Cir. 2017) (quoting United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003)). In evaluating whether probable cause supports a warrantless search, "courts apply a common sense approach and consider all relevant circumstances." United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003).

Magistrate Judge Brisbois determined that the totality of the circumstances supported a finding that there was probable cause for the police to tow the Buick LaCrosse. [Doc. 60 at 19–20.] Specifically, Magistrate Judge Brisbois pointed out that two different 911 calls—placed within an hour of each other—recognized the Defendant by name, identified him as carrying a firearm, and described that he was driving a "light colored passenger vehicle." [Id. at 19]

Further, Magistrate Judge Brisbois dismissed Defendant's argument that the Pine County Sheriffs knew of inconsistencies in Lindgren's account before the Buick was towed. Magistrate Judge Brisbois emphasized that the two 911 calls triggered separate investigations involving different officers, noting that "the Pine County officers who learned of these inconsistencies before the vehicle was towed are different from the Duluth Police Department officers who, at the time they made the decision to tow the vehicle, had no knowledge of Lindgren's inconsistencies." [Id. at 20.] Overall, Magistrate Judge Brisbois concluded that

11

under these circumstances, the "potential likelihood of evidence in the Defendant's vehicle was at the time reasonably high." [Id. at 19.]

Defendant's objection challenged Magistrate Judge Brisbois's iteration of the facts, stating that the R&R "omitted" or "contradicted without basis" important facts that demonstrated how Duluth police knew about the inconsistencies in Lindgren's narrative prior to the vehicle's towing. [Id. at 3–4.] However, when this Court conducted its independent review of the Evidentiary Hearing transcript, it fails to see how the facts Defendant cites meaningfully suggest that the Duluth Police responding to Hopson's 911 call were entirely sure of Lindgren's inconsistent story about Defendant prior to the decision to tow the vehicle.

For instance, Defendant notes that at the evidentiary hearing, the "Pine County Sheriff's Office kept the Duluth police apprised of the discrepancies in Lindgren's account," as well as cited testimony that the Pine County Sheriffs reported to Duluth police that Lindgren had <u>not</u> been shot in the stomach or the elbow. [Doc. 61 at 3–4.] While the pages cited by Defendant demonstrate that these inconsistencies were, at some point, communicated to the Duluth police responding to Hopson's 911 call, what is missing from the record is a clear

understanding of who knew what, and at what time. The Court cannot conclude from the record before it that the Pine County Sheriff's Office had communicated the fact the Lindgren was not telling the truth about Defendant's use of a firearm prior to the Duluth police department's decision to tow the vehicle. Certainly, the testimony cited by Defendant is not persuasive enough evidence to challenge Magistrate Judge Brisbois's conclusion that the two investigations occurred "simultaneously."

Further, the Court fails to see how the inclusion of certain factual representations from Hopson to the Duluth police change the equation. Defendant noted that Hopson told police that Defendant did not return to his car, Defendant stated he was going to "stash his gun," and security footage did not show Defendant with a firearm. [Doc. 61 at 3–4.] However, the Court remains persuaded by the government's assertion that "each [911] report alone serves as corroboration for the other." [Doc. 55 at 9.] Two alleged victims independently reported separate armed assaults by Defendant in the city of Duluth in the same early morning hours, each identifying him by name and using similar descriptors to describe the vehicle he drove. Such corroboration can support the finding of probable cause. See e.g., United States v. Crawford, 93 F.4th 436, 440 (8th Cir.

13

2024) (citing that the combination of multiple 911 calls, a victim's statement that the defendant had a gun, and police observation supported a finding that the officers' warrantless search of a vehicle was supported by probable cause); United States v. Sims, 424 F.3d 691, 692–93 (8th Cir. 2005) (finding that probable cause existed to seize defendant's car because it matched the victim's description of the car); United States v. Martinez, 78 F.3d 399, 401 (8th Cir. 1996) (finding that probable cause existed, at least in part, to search a car when two sources identified defendant). In light of the similar reports from Lindgren and Hopson, the additional facts Defendant highlights do not undermine the officers' probable cause determination that the vehicle may have contained evidence of the assaults.  Accordingly, those details do not alter the Court's conclusion that law enforcement had sufficient probable cause to seize the vehicle.

Further, Defendant erroneously relies on U.S. v. Gilette to argue that the knowledge of the Pine County deputies is "properly imputed to the Duluth police because they were all working together on the same investigation." [Doc. 61 at 6–7 (citing United States v. Gillette, 245 F. 3d 1032, 1034 (8th Cir. 2001)).] Defendant is correct that the collective knowledge doctrine is used to impute the knowledge of one officer to another in order in certain circumstances. However,

14

as described above, the Court has concluded that the Pine County Sheriffs and the Duluth Police Departments were not working together on the same investigation, which is crucial to application of this doctrine. Moreover, Eighth Circuit case law makes clear that the collective knowledge doctrine is used to "uphold an otherwise invalid search or seizure," not the other way around. [See Gillette, 245 F. 3d at 1034 (emphasis added).] Therefore, the attempt to rely on this doctrine to invalidate the seizure in this circumstance is unavailing.

Finally, Defendant objects to how the government "continued to hold the vehicle without regard to the fact that they had no basis to do so." [Doc. 61 at 8.] However, as the facts make clear, Mr. Gaskill waited the necessary time to take legal possession of the vehicle. [Doc. 60 at 7.] There is no reason to conclude, based on the present facts, that the police maintained control over the vehicle in the interim period.

In sum, Defendant's objections to Magistrate Judge Brisbois's recommendation to deny the Defendant's motion to suppress evidence based on the illegal seizure are overruled.

2.      **Motion to Suppress Evidence Obtained as a Result of Search Warrant for Hopson's Apartment [Doc. 41.]**

Defendant first argued that the December 8, 2022 search warrant the police obtained to search Hopson's apartment failed to establish a sufficient nexus between Defendant's possession of a firearm and Hopson's home and, in the alternative, argued that the search warrant was based on stale information. [Doc. 52 at 20–28.] Instead of reaching the merits of Defendant's argument, Magistrate Judge Brisbois concluded, after applying the factors outlined in United States v. Gomez, that Defendant lacked standing to raise the challenge to evidence flowing from the search warrant. [See Doc. 60 at 24–27 (citing 16 F.3d 254, 256 25 (8th Cir. 1994)).  As part of his analysis, Judge Brisbois emphasized that:

> Defendant fails to sufficiently allege that he has an ownership interest, control over, or a subjective expectation of privacy in Ms. Hopson's Apartment subject to the December 8, 2022, Search Warrant. Moreover, nothing on the record now before the Court supports a finding that Defendant had an objective expectation of privacy in said apartment at the time the December 8, 2022, Search Warrant, was issued or executed.

[Doc. 60 at 26.]

Defendant objects to such conclusion, arguing that his mother, Melody Gonsalez, testified at the suppression hearing that Defendant lived with Hopson. [Doc. 61 at 11–12.] Further, Defendant asserted that the issue of probable cause is

16

"limited to the four corners of the search warrant affidavit." [Id. at 12.] Finally, Defendant emphasized throughout that because the government did not raise the issue of standing, the argument was not completely developed. [Id. at 11–12.]

Defendant's arguments, however, are unpersuasive. The Eighth Circuit has noted that, "[b]ecause fourth amendment rights are personal, a person challenging a search warrant must demonstrate that he or she has a legitimate expectation of privacy in the area searched." See United States v. Wiley, 847 F.2d 480, 481 (8th Cir. 1988).  Magistrate Judge Brisbois correctly emphasized that Defendant had not demonstrated that he had an expectation of privacy in Hopson's home.  Instead, Defendant repeatedly demonstrates that the contrary is true. For instance, Defendant originally noted that he had to "forcibly" enter Hopson's apartment—indicating that Defendant "did not have his own keys to the apartment and was not permitted access"—and that for the two months the police were tracking Defendant's cell phone, the police did not "spot [Defendant] in the area of Hopson's apartment until December 8." [Doc. 52 at 20–23.] Yet, now Defendant takes issue with the Court's conclusion that Defendant did not have a reasonable expectation of privacy in Hopson's apartment.

17

Defendant cannot have it both ways.  The Court understands that the evidence in front of it presents contradictory facts.  One the one hand, Defendant asserts that there is an insufficient nexus tying him to Hopson's apartment.  On the other hand, Defendant points to his mother's comments that he lives with Hopson.  However, the weight of the evidence favors Magistrate Judge Brisbois's interpretation that Defendant did not have a reasonable expectation of privacy in Hopson's apartment and therefore lacks standing to assert a challenge to what evidence was discovered from the execution of the December 8, 2022 search warrant. Not only does the objective evidence support his conclusion, Magistrate Judge Brisbois was also in the best position to weigh witness credibility.  See United States v. Sinclair, 474 F.3d 1148, 1149 (8th Cir. 2007) (stating that the magistrate judge is in the best position to evaluate the credibility of witness testimony); United States v. Kuhnel, No. CR 17-158 (JRM/BRT), 2019 WL 6769417, at *3 (D. Minn. Dec. 12, 2019)  (because Magistrate Judge was present for the examination of the witness, she was "in a much better position to evaluate his credibility and demeanor when subject to questioning" and therefore, the court found that the "R&R accurately reflected the facts" and adopted them).

18

As such, the Court need not reach Defendant's objections to the search warrant itself.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Court **ADOPTS** the Report and Recommendation of United States Magistrate Judge Leo I. Brisbois filed January 16, 2026. **[Doc. 60.]** as follows:

1. Defendant's Motion to Dismiss Count 2 **[Doc. 37]** is **DENIED**; and

2. Defendant's Motions to Suppress Evidence Obtained as a Result of Search and Seizure **[Docs. 38, 41]** are **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 12, 2026                    s/Michael J. Davis
                                          Michael J. Davis
                                          United States District Court